IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
02 OCT -4 PM 2:23
U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| ALPHONZO HUMPHREY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CV-99-S-590-NE |
| ) | |
| DR. BEN MOORE, HARRIS DOBBS, ) | |
| LT. JIM GATES, CORRECTIONAL ) | |
| MEDICAL SERVICES, INC., DAVID WISE, ) | |
| DR. ROBERT CAIN, DR. FORNER, ) | |
| DR. KHOURI, ) | |
| ) | |
| Defendants. ) | |

ENTERED
OCT 4 2002

## MEMORANDUM OPINION

This cause is before the court on several motions for summary judgment filed by various defendants. This is an action by an Alabama prisoner, complaining that he has been deprived of his Eighth Amendment constitutional right to be free from cruel and unusual punishment because he has been denied his treatment of choice for his HIV and Hepatitis-C infections. He further alleges that, after he lodged a complaint concerning his medical treatment, he was threatened by defendant Jim Gates in retaliation for having voiced a complaint about the perceived inadequacies of his medical treatment. In accordance with the usual procedures of this court and 28 U.S.C. § 636, the action was initially referred to a magistrate judge for management of preliminary pretrial matters. It is now before the court on the motions for summary judgment.

## Procedural Background

Because of the extended history of this case, the statement of the procedural history is unduly complex. It suffices to say that the plaintiff filed his initial complaint on March 12, 1999, alleging violation of this Eighth Amendment right to be free of cruel and unusual punishment due to the denial of adequate medical care and that he was threatened in retaliation for having complained about the alleged inadequate medical care. Named as defendants in the original complaint were Dr. Ben Moore, identified as a staff physician at the Limestone Correctional Facility; Harris Dobbs, a nurse employed at the Limestone Correctional Facility; and Lt. Jim Gates, a correctional lieutenant at Limestone. By various amendments throughout the course of this litigation, plaintiff named as additional defendants Correctional Medical Services, Inc. ("CMS"), the company with which the Alabama Department of Corrections has contracted to provide medical care to prison inmates; Davis Wise, the assistant warden at Limestone; Dr. Robert Cain, the state-wide Medical Director for CMS; and two staff physicians employed by CMS at Limestone, Dr. Forner and Dr. Khouri. Drs. Moore, Forner, and Khouri have never been served with process or made an appearance in this action, despite numerous attempts by the court to notify them of the case.[1]

The court has received special reports from the remaining defendants. CMS and Dobbs filed their special report on April 12, 2000 (Doc. 34), which is supported by affidavits and other exhibits. Additionally, CMS and Dobbs earlier, on September 28, 1999, also filed a response to plaintiff's request for a preliminary injunction, which also was supported by affidavits and exhibits (Doc. 21).

---

[1] All mailings to these defendants have been returned as undeliverable either because they are no longer employed by CMS or the address given was insufficient for delivery. The court denied the plaintiff's motion for appointment of a process server because no reliable service address for these doctors has ever been identified by plaintiff.

2

Lt. Gates filed his special report on May 30, 2000 (Doc. 41), as did Assistant Warden Wise on September 18, 2000 (Doc. 54). Finally, defendants CMS, Dobbs, and Dr. Cain filed a supplemental special report on October 5, 2000 (Doc. 58). Since all of these reports were supported by affidavits and exhibits, the court has treated them as motions for summary judgment, prompting the court on April 2, 2002, to notify the parties that they will be taken under submission and to explain to plaintiff the nature and consequences of summary judgment. (See Doc. 67). Plaintiff has filed nothing in response to the court's notice.[2]

## Summary Judgment Standards

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of

---

[2] Given that plaintiff filed numerous motions, pleadings, and responses during the course of this litigation, it is curious that he has not responded to the court's notice that the special reports would be treated as motions for summary judgment. Plaintiff was released from prison in early 2001. In response to an order directed to him, he reported in April 2001 that his address was 1104 Tyler Road, Huntsville, Alabama, and that is the address the court has used since to communicate with him.

3

some element of its case on which it bears the ultimate burden of proof. Celotex, 477 U.S. at 322-23. There is no requirement, however, "that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." Id. at 323.

Once the moving party has met his burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324 (quoting Fed. R. Civ. P. 56(e)). The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings. Celotex, 477 U.S. at 324. "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. at 322.

After the plaintiff has properly responded to a proper motion for summary judgment, the court must grant the motion if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. His guide is the same standard necessary to direct a verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52; see also Bill Johnson's Restaurants, Inc.

v. N.L.R.B., 461 U.S. 731, 745 n.11 (1983). However, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249 (citations omitted); accord Spence v. Zimmerman, 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. Anderson, 477 U.S. at 254; Cottle v. Storer Communication, Inc., 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. Anderson, 477 U.S. at 255. The non-movant need not be given the benefit of every inference but only of every reasonable inference. Brown v. City of Clewiston, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

<u>Facts for Summary Judgment Purposes</u>

Applying these standards to the evidence before the court, the following facts are taken as undisputed or, if disputed, in a light most favorable to the non-moving plaintiff.

Plaintiff has been diagnosed positive for HIV since the mid-1990s, with a history also of Hepatitis-B and -C. He re-entered the Alabama Department of Corrections on September 11, 1998, after having been incarcerated at an earlier time. Medical records from his earlier incarceration indicated that he was HIV-positive and had been diagnosed with both Hepatitis-B and -C. On September 25, 1998, plaintiff was placed on medication for treatment of his HIV infection. Within

a few days, plaintiff began to suffer pain and night sweats. He reported this to CMS Nurse Riggs during sick call on September 30, 1998, who told plaintiff that his liver was swollen and that there was nothing that could be done about it. Plaintiff was scheduled to see the doctor the next day, October 1, 1998. Plaintiff saw the doctor, presumably Dr. Moore, the next day and was informed again that there was no treatment or cure for his Hepatitis-C.

In December 1998, plaintiff wrote a letter to defendant Harris Dobbs, the CMS Director of Nursing at Limestone, reporting information he had learned indicating that a combination of Ribaviran and Interferon, called Rebetron, had been approved as a new treatment for Hepatitis-C. He asked to see the doctor to discuss the treatment. Nurse Dobbs responded in a letter, telling plaintiff that Dr. Moore did not believe the treatment had proven effective and that it was not recommended for persons infected with both Hepatitis-C and HIV. Plaintiff persisted in his efforts to inquire about Rebetron treatment, writing letters to Nurse Dobbs, writing notes to various corrections officers, and having his sister attempt to contact Warden Wise to ask him to look into the matter. Nurse Dobbs continued to inform plaintiff that the combination medicine was not approved for "co-infected" persons and that, in fact, it could be fatal to people infected with HIV. Finally, on January 27, 1999, plaintiff met with Dr. Moore. Although plaintiff wanted to talk about Rebetron treatment, Dr. Moore was more interested in addressing plaintiff's HIV. Ultimately, Dr. Moore reiterated that the combination of Ribaviran and Interferon was not approved for treatment of patients with both Hepatitis-C and HIV. Plaintiff tried to present the doctor with materials showing that Rebetron had been used to treat "co-infected" patients, but Dr. Moore responded simply that it was too expensive and he continued to decline to consider it for plaintiff's Hepatitis.

6

On February 16, 1999, plaintiff filed an administrative grievance, complaining that Dr. Moore was refusing to treat his Hepatitis-C. The next day, plaintiff was called to Lt. Gates's office. There, Gates threatened plaintiff for complaining about Dr. Moore. He told plaintiff, "I will st[o]mp the [G]od-dam[n] shit out of you. I will kill you. What the fuck are you doing to Dr. Moore?" When plaintiff responded that he had filed the grievance, Gates told plaintiff, "It stops right fuckin' here." Gates then threatened to kill plaintiff if he persisted in his grievance against Dr. Moore. The next day, February 18, 1999, Nurse Dobbs filed a response to the administrative grievance, pointing out that Dr. Moore continued to assert that the combination treatment had not been approved for "co-infected" patients and that plaintiff did not need the treatment because he still had good liver function. Medical tests performed at that time indicated that plaintiff's liver was functioning normally. There was no evidence that he fit the profile for a patient needing interferon treatment for hepatitis.

The United State Department of Justice, Bureau of Prisons Infectious Disease Manual specified that HIV infection was a contraindication for interferon alpha treatment of Hepatitis-C, as well as in persons co-infected with Hepatitis-C and Hepatitis-B. Furthermore, the March 24-26, 1997, statement of the National Institute of Health Consensus Development Conference provided that interferon alpha treatment should be reserved for only those patients at greatest risk of liver cirrhosis shown by persistently high levels of certain liver enzymes and by a liver biopsy confirming cirrhosis. Plaintiff's liver function tests were essentially normal and a liver biopsy was not considered because his viral loads were so low. (See Dr. Robert Cain's affidavit; attachment to Doc. 34).

On March 3, 1999, plaintiff wrote a letter to Assistant Warden Wise, complaining about the lack of medical treatment and the threats made by Lt. Gates. On March 8, 1999, plaintiff received a response indicating that Lt. Gates and another officer present during the meeting denied that Gates had threatened to kill plaintiff.

Dr. Moore resigned his position at Limestone on April 16, 1999, and was replaced by Dr. Khouri, the staff physician assigned to Limestone by CMS. In September 1999, plaintiff was seen by Dr. Cain, the Statewide Medical Director for CMS. On November 30, 1999, plaintiff underwent an abdominal ultrasound, and on December 9, 1999, while Dr. Khouri was on vacation, Dr. Forner, substituting for Dr. Khouri, told plaintiff that the ultrasound exhibited signs that plaintiff had suffered some cirrhosis of the liver. Thereafter, Dr. Khouri continued to monitor plaintiff's medical condition, occasionally ordering liver profiles to determine whether his liver function was declining. Plaintiff was released from prison on January 25, 2001, when he completed serving his sentence.

### Medical Care

Plaintiff's first claim is that defendants Moore, Forner, Khouri, Cain, Dobbs, and CMS deprived him of his Eighth Amendment right to be free from cruel and unusual punishment because they failed to provide him with necessary medical treatment for his Hepatitis C. The court finds that this claim is meritless and that defendants are entitled to judgment as a matter of law.

In order to establish liability under § 1983 for inadequate medical treatment, a prisoner must show that a failure to provide medical treatment amounted to cruel and unusual treatment in violation of the Eighth Amendment. The United States Supreme Court has held that it is only "deliberate indifference to serious medical needs of prisoners which will give rise to a claim of cruel

8

and unusual punishment in violation of the Eighth Amendment." <u>Estelle v. Gamble</u>, 429 U.S. 97 (1976).

In <u>Hamm v. DeKalb County</u>, 774 F.2d 1567, 1574 (11th Cir. 1985), *cert. denied*, 475 U.S. 1096 (1986), the Eleventh Circuit held that an inmate's dissatisfaction with the medical treatment provided by the prison did not constitute a violation of the Eighth Amendment as long as the treatment provided did not amount to deliberate indifference. The Eighth Amendment is implicated only when the prison doctors or guards intentionally and deliberately deny or delay access to medical attention to serious medical conditions. <u>Barfield v. Brierton</u>, 883 F.2d 923, 938 (11th Cir. 1989). Two components must be evaluated to determine whether the plaintiff has been subjected to cruel and unusual punishment. "First, [the court] must evaluate whether there was evidence of a serious medical need; if so, [it] must consider whether [the defendants'] response to that need amounted to deliberate indifference." <u>Mandel v. Doe</u>, 888 F.2d 783, 788 (11th Cir. 1989). Clearly, "not every injury or illness invokes the constitutional protection; only those that are 'serious' have that effect."<u>Hampton v. Holmesburg Prison Officials</u>, 546 F.2d 1077, 1081 (3rd Cir. 1976). Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.' <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992). In <u>Estelle</u>, the Court recognized that medical needs constitutionally requiring medical attention ranged from "the worst cases," producing "physical 'torture or a lingering death,'" to "less serious cases," resulting from the "denial of medical care," which could cause "pain and suffering." <u>Estelle</u>, 429 U.S. at 103. A "serious" medical need has been defined as "one that has either been diagnosed by a physician as mandating medical treatment or one that is so obvious that even a lay person would recognize the need for a doctor's

attention." <u>Laaman v. Helgemoe</u>, 437 F. Supp. 269, 311 (D.N.H. 1977). <u>See also</u> <u>Page v. Sharpe</u>, 487 F.2d 567, 569 (1st Cir. 1973). It is the necessity and not the desirability of medical treatment sought which is important to the determination of whether medical officials have exhibited deliberate indifference. <u>Woodall v. Foti</u>, 648 F.2d 268 (5th Cir. 1981). Failure to provide medical treatment that is not efficacious or appropriate for the plaintiff's condition, even if requested by the plaintiff, is not deliberate indifference, but the sound exercise of medical judgment.

In this case, plaintiff was not subject to deliberate indifference to his serious medical condition. There is no question that his HIV and Hepatitis-C constituted serious medical conditions. The issue is whether the treatment he received for them was appropriate. First, it must be noted that plaintiff has not offered any expert evidence to establish that the treatment decisions made by these defendants was medically inappropriate. Indeed, their citation to the BOP Infectious Disease Manual and the National Institute of Health Consensus Development Conference Statement support defendants' assertion that interferon treatment of plaintiff's Hepatitis-C was contraindicated by his HIV and Hepatitis-B infections. Plaintiff has offered no admissible expert evidence to question this medical standard and the conclusions reached by the physician defendants.

Second, plaintiff's complaint about medical treatment amounts to nothing more than a disagreement about the proper treatment he should receive. As long as defendants exercise reasonable medical judgments about the treatment provided, they did not act indifferently to plaintiff's condition. A mere disagreement about treatment does not rise to the level of deliberate indifference. <u>Hamm v. DeKalb County</u>, 774 F.2d 1567 (11th Cir. 1985), cert. denied 475 U.S. 1096, 106 S.Ct. 1492, 89 L.Ed. 2d (1986) . "Deliberate indifference exists when 'the questioned conduct is cruel and unusual because it involves deliberate indifference, or something more than a medical

judgment call, an accident, or an inadvertent failure.'" Peterson v. Willie, 81 F.3d 1033, 1038 (11th Cir. 1996)(quoting Murrell v. Bennett, 615 F.2d 306, 310 n. 4 (5th Cir.1980)). Here, the defendants made reasonable medical judgment calls about when and if some treatment was necessary for plaintiff's Hepatitis-C, and particularly whether that treatment ran a risk of exacerbating his HIV. The decisions that must be made concerning the treatment of such chronic and intractable diseases as Hepatitis-C and HIV are difficult and often not clear-cut. Absent some evidence from the plaintiff that the decisions made in his case were grossly unreasonable and incompetent, the court cannot say that they amounted to deliberate indifference to plaintiff's medical needs.

Additionally, the court notes that defendants Moore, Forner, and Khouri have never been served with process or otherwise joined in this action. Although attempts have been made to notify them of the existence of this suit, they have been unsuccessful. In the very least, the complaint must be dismissed as to these three defendants under Rule 4(m), F.R.C.P, due to the lack of service upon them.

Finally, the court also observes that plaintiff attempts to hold CMS liable simply on the basis that it was the employer of these physicians, or on the basis of *respondeat superior*. Because plaintiff has made no attempt to show that the particular treatment decisions made here were the product of some policy in force at CMS, the employer-employee relationship alone is not enough to establish § 1983 liability on the part of CMS. Monell v. Department of Social Services, 436 U.S. 658, 98 S.Ct 2018, 56 L.Ed. 2d 611 (1978).

By separate order, summary judgment will be granted in favor of CMS, Cain, and Dobbs. Further, the complaint will be dismissed for want of service of process as to defendants Moore, Khouri, and Forner.

11

### Threats by Gates

Plaintiff also alleges a § 1983 claim against Lt. Jim Gates and Assistant Warden David Wise, grounded on threats Gates allegedly made toward plaintiff in retaliation for plaintiff filing a grievance regarding medical care. At the outset, it is clear that Gates did not harm plaintiff physically in any way; despite the threat to kill plaintiff, no violence occurred. Moreover, there is no evidence that Warden Wise was aware of, authorized, or approved of Gates's conduct until plaintiff reported it **after** it took place. Mere verbal threats alone are not sufficient to state a cause of action under § 1983. *Collins v. Cundy*, 603 F.2d 825 (10th Cir. 1979); *Jones v. Superintendent*, 370 F. Supp. 488, 491 (W.D. Va. 1974), *citing Johnson v. Glick*, 481 F.2d 1028 (2d Cir.), (*cert. denied*, 414 U.S. 1033 (1973)); *Oltarzewski v. Ruggiero*, 830 F.2d 136 (9th Cir. 1987); *Stacey v. Ford*, 554 F. Supp. 8 (N.D. Ga. 1982). A distinct issue, however, is whether a verbal threat intended to retaliate against a prisoner's exercise of a constitutional right, such as seeking redress of grievances, is actionable even though the threats themselves do not rise to the level of a constitutional violation. Stated another way, are verbal threats actionable as retaliation.

The court concludes that they are, but also that these defendants are entitled to qualified immunity from damages. First, although the threats standing alone may not rise to the level of a constitutional violation, when used to punish or deter the prisoner's right to exercise a constitutional right, they become actionable. One district court has summarized the circuit law as follows:

> It is well settled in this circuit that "prison officials may not retaliate against an inmate for exercising a constitutionally protected right." Adams v. James, 784 F.2d 1077, 1082 (11th Cir. 1986) (reaffirming the principle that "prison officials may not retaliate against an inmate for exercising a constitutionally protected right."), relying on Bridges v. Russell, 757 F.2d 1155 (11th Cir. 1985). See also Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)(reversing the district court's dismissal of an

12

inmate's First Amendment claim for retaliation); Harris v. Ostrout, 65 F.3d 912, 916-17 (11th Cir. 1995) (holding that summary judgment was inappropriate on First Amendment claim where prisoner submitted affidavits by other prisoners which inferred that the defendant's statements suggested he had filed disciplinary reports against plaintiff in retaliation for earlier litigation); Wildberger v. Bracknell, 869 F.2d 1467, 1468 (11th Cir. 1989) (noting that if an inmate is disciplined as "the result of his having filed a grievance concerning the conditions of his imprisonment, he" has clearly "raised a constitutional issue"); Wright v. Newsome, 795 F.2d 964, 968 (11th Cir. 1986) (holding that an inmate may still present a First Amendment retaliation claim even though the complaint alleges facts "that might not otherwise be offensive to the Constitution," such as a search or the confiscation and destruction of nonlegal materials.). . . . Furthermore, "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising" his constitutional right to free speech, redress of grievances, or similar activity. Thomas v. Evans, 880 F.2d 1235, 1242 (11th Cir. 1989). "The penalty need not rise to the level of a separate constitutional violation." Thomas, 880 F.2d at 1242 (citations omitted).

Wilson v. Silcox, 151 F.Supp. 2d 1345, 1351 (N.D.Fla. 2001). Clearly, taking plaintiff's evidence as true that Gates threatened to kill him if he continued to complain about medical treatment by Dr. Moore, such threat was made in retaliation for plaintiff having filed an administrative grievance, a constitutionally protected activity. Even though the threats themselves do not make an actionable claim, they became actionable when used to retaliate for the prisoner's exercise of his constitutional right to seek redress of grievances.

Defendant Gates also has pled his entitlement to the defense of qualified immunity from damages. (See Doc. 41). "Qualified immunity protects government officials acting within their discretionary functions from liability for civil damages as long as their conduct does not violate clearly established statutory or constitutional rights that a reasonable person would have known. Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); Rogers v. Miller, 57 F.3d 986, 988 (11th Cir.1995)." Skrtich v. Thornton, 280 F.3d 1295, 1302 (11th Cir. 2002).

Similarly, the Eleventh Circuit Court of Appeals has recently reiterated qualified immunity standards in this circuit, as follows:

> The Supreme Court recently set forth a two-part test for evaluating a claim of qualified immunity. As a "threshold question," a court must ask, "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156, 150 L.Ed.2d 272 (2001). If a constitutional right would have been violated under the plaintiff's version of the facts, the court must then determine "whether the right was clearly established." Id. This second inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Id.; see also Marsh v. Butler County, 268 F.3d 1014, 1031-33 (11th Cir.2001) (*en banc*).

Lee v. Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). Because the court has concluded here that making threats to the plaintiff for retaliatory purposes violated a constitutional right, the question for qualified immunity purposes becomes whether that right was clearly established. As the Supreme Court recently repeated, "If the law did not put the officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate." Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 2156-7, 150 L.Ed.2d 272 (2001) citing Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law").

Under these facts, the court cannot say that the law clearly put Lt. Gates and other reasonable officers on notice in 1999 that making a retaliatory *threat*, otherwise unaccompanied by any penalty to the prisoner, violated the prisoner's constitutional rights. While there were cases clearly stating then that imposing a retaliatory *penalty* upon a prisoner was unconstitutional, all of those cases involved actual detriments to the prisoner, such as transfers to stricter custody, segregation,

disciplinary infractions, and loss of prison job assignments. Prior to 1999, no case held that making a mere verbal threat, even with a retaliatory animus, was actionable. Indeed, as cited above, the case law has repeatedly held that mere verbal threats did *not* rise to the level of an actionable constitutional violation. A reasonable corrections officer could not have been required to understand that, notwithstanding that body of case law, a mere verbal threat could become actionable if made to retaliate for the prisoner exercising another constitutional right. In the tense and sometimes violent world of prisons, the line between a lawful command and a "threat" is thin indeed. In dealing with intractable inmates, officers are required to be forceful, and it is too easy for a prisoner to allege that a "forceful" command was a threat. For this reason, the distinction between threats as the basis for a retaliation action and actual penalties as the basis made sense and was workable, at least in 1999 when these events occurred. Thus, the court finds that, although verbal threats, made with the intention of retaliating against a prisoner for exercising a constitutional right, is itself an actionable constitutional violation, defendants here are entitled to qualified immunity because that right was not clearly established in 1999.

Further and alternatively, Warden Wise is entitled to summary judgment because the evidence fails to establish that he was involved in, approved of, or otherwise was aware of the threats by Lt. Gates. Warden Wise cannot be liable simply because he was Lt. Gates's supervisor. Fundiller v. City of Cooper City, 777 F.2d 1436 (11th Cir. 1985). There is no showing of an affirmative causal link between Warden Wise and the threats made by Lt. Gates.

## Conclusion

In conclusion, the court finds, after viewing the evidence most favorable for the plaintiff, that he has no claim for denial of adequate medical care. Although he did not receive the medical treatment he wanted for Hepatitis-C, the evidence plainly shows that defendants were exercising reasonable medical judgment, albeit at odds with what plaintiff wanted. Further, although plaintiff was subjected to retaliatory threats, defendants Gates and Wise are entitled to qualified immunity from damages. By separate order the court will grant the various motions for summary judgment.

Moreover, the motion to stay proceedings due to the liquidation of defendants' liability carrier (Doc. 66) is MOOT.

DONE this 4th day of October, 2002.

_____
C. LYNWOOD SMITH, JR.
UNITED STATES DISTRICT JUDGE